May it please the Court. Are you the one that was courtroom chopping or hopping? Yes, I was. I was just a floor away a couple minutes ago. May you proceed. Thank you, Your Honor. Good morning. May it please the Court. My name is Matthew Hopick. I represent a gentleman named Boendi Limbeya. This is a tough appeal to bring to the Eighth Circuit because we start with bad facts. My client admitted that he lied at court. He did not tell the truth when he was asked who had signed and prepared his application. He came clean after telling the lie. He signed an affidavit that said I wasn't telling the truth. The person who really prepared my application was this gentleman who, it turns out, committed a lot of asylum fraud for other people. But he insisted in his affidavit that the story on the application was mine. I told it. I told it to him in French and he translated it. The question here is whether that single misrepresentation, absent the question of whether he recanted it timely, whether that single misrepresentation makes his entire application frivolous. And the question is resolved by determining whether it is a material misrepresentation. And the courts have said misrepresentations are material if they go to the merits, if they have some bearing on whether the application would have been adjudicated differently had he not misrepresented that fact. Here's what troubles me here, and this is probably more of a question for the government, but the only thing that is admittedly wrong is the preparer's name and the then says he finds your client not credible and makes references to his testimony essentially as a whole being not credible. And it's not clear to me from the opinion, but arguably, and maybe we can reasonably infer that what he's saying is because that's wrong and he lied and he lied orally to the court, to the agency, everything else he says I don't believe, whether it's right or not, that the IG is saying I can't, this is so obviously lying that everything else is not credible and so I'm not accepting anything. Now, he doesn't really say that, but you could infer from that that that's what he's saying. It's what I understood, too. The Latin phrase is falsus in uno, falsus in omnibus, that you're wrong about everything, you've been wrong about one thing. The problem I have with the way the judge recited it was she said he never says the rest of the story is my own. Well, he does. She has the right to find him not credible. She has the right to say I don't believe you because you already told me one lie. But what the IG said was not that. What she said was he never claims the rest of it is his story, and we think that is clearly erroneous fact finding. The board repeated it when the board reviewed it on appeal because the board said the same thing. But what if the IG is saying I don't believe anything you say? Doesn't make any difference whether the rest of the story is his story or not. He's just saying I don't believe anything you say. True. Does that become material? Because the whole story is incredible? There are two reasons it might not. One reason is it's the government's burden to prove that the facts in the application are fabricated. Just the credibility. The board has said a couple times in the matter of BY case, just finding a person not credible isn't enough to find as a matter of fact that their application has been fabricated. I don't believe you isn't the same as I can prove that you're telling a lie. And the second is that the government has the burden to prove that the application is frivolous. And so it's the government's burden to prove that the application is fabricated. And that's the second point we make in our brief, which is by applying this mass presumption, you told one lie so we're going to believe everything else is false, they really shift the burden to Mr. Lembeya to prove it's not false. And that's just not how the frivolousness statute works. The second reason I think it doesn't make so much difference is he's applying for this other form of relief. He's married. He has a child. His wife filed for him. So by the time we get to the final hearing, he's not even asking for asylum. And so that's the other reason we don't think it's going to be granted relief or not. At the final hearing, he said, I really don't want asylum. I want this visa filed by my wife. And the court and the DHS insisted that they take testimony, likely because they knew something we didn't know at trial. But that's beside the fact that the real question is, was that testimony material at the time of the hearing? Would it have made the judge grant or not grant his asylum application? We would submit it wouldn't have. Absent from the government's brief is any indication that he would not have been granted adjustment of status had he not told a lie or had the judge not found his application to be frivolous. That's important, because if he would have been granted adjustment of status based on his marriage, because he's married to a U.S. citizen and has a child, then the rest of this stuff about asylum, in our view, just is not material. I have a question about what I what I also think is part of the judge's decision, which is you never really took these words on as your own. Is that your understanding of what the immigration judge was saying? That's what I understood her and the board to say. So let's talk about where actually he did say that they were his words. I see that he did testify in September. It was the September hearing, right? 2010. And he says he was writing. I was talking. Is that is that the kind of testimony that you're relying on to say, no, wait, he did say that this was my story, not just the story of the person who prepared the application? Yes, that testimony. But there's two other things. OK, the affidavit he filed that came clean for lying in that affidavit. He said, I told him my story. He didn't say Mr. Cabongo made up my story. And I said, I'll go with that one. He said, I told him my story and translated it to English. Ask him to translate it. Ask him to translate English. Correct. There's a slight difference. There is a slight ask him to translate. But I do think in the affidavit what he's trying to say. And one of the problems is this affidavit wasn't supposed to encompass the entire world of the case. It was supposed to tell the judge I lied. And so there might be things missing. You might have omitted each and every one of these facts is mine. But the point of making the brief is that's not really his burden. The government's burden to prove that he was the facts are fabricated. But the second thing is that Cabongo affidavit. We objected to it. We said this is not admissible. The guy's not here to cross examine. In fact, I think he's in the Democratic Republic of Congo. How can you put in an affidavit of the record attesting to something that happened when I can't cross examine? It's a basic due process problem. But the Cabongo affidavit does say Mr. Lembeya told me his story. When we cross examined the government's witness about why he thinks the entire application was fraudulent. I can't remember his quote, but he said something I'm guessing or I'm assuming that the entire thing was fraudulent. He said that because the affidavit doesn't say that. The affidavit says Mr. Lembeya told him his story and he wrote it onto the application. So you think that there is evidence or testimony at both that hearing and in that supplemental affidavit in which your client is saying it's my story? Yes. I think there is. And we'll sort of lean on our other argument, which is it's not really even his burden to prove that everything in his application is not fabricated. When a judge makes a frivolousness finding, the consequences are so dire, he is now banned for life from the United States. No matter what happens 50 years from now, unless the law changes, he will never come back to the United States. Because the consequences are so dire, they require a higher burden of proof and they shift it to the government. But the government has to prove that the application was fabricated and the fabrication was material. I think our best argument on appeal is that that fabrication, the admitted fabrication, was not material. It didn't have anything to do with the merits. And if the board is not allowed to shift the burden to the government, then this is a case that should be remanded. Another point we touched on very briefly. The weight of the burden is preponderance, right? That's correct. Proceed. Yeah, that's right. So what relief are you looking for? He would love to adjust his status and live here in the United States with his wife. I concede he's probably going to need to ask the court for a waiver, because if you make a misrepresentation, you aren't admissible to the United States unless the court grants you some form of clemency under INA 212I. So he has a steep hill to climb. Even if he goes back to court, the judge might say, I don't find you credible. The judge could deny adjustment as a matter of discretion. She has that right. So he might get back to the court and the judge says, I'm not going to grant it to you anyway. But as we stand today, she hasn't said that. The attorney general didn't say that in their brief. We would ask for adjustment of status. I think he's eligible. His wife filed the visa petition. It was approved. Well, so you're asking us to say that it's not a material misrepresentation. Correct. And then grant your petition for relief. And then it goes back for further proceedings. Is that what you say? Right. The court could leave it open for the board to, I mean, the court could say it's not a material misrepresentation. Now the board can do with it as it wants. And then we can go back to the board and say he should get a remand for adjustment. And I don't want the court to tie the board's hands. What I really want the court to do is tell the board, apply the law on frivolousness. And if you do, this is not a frivolous application. Now let's deal with the rest. The final point I wanted to raise is that he recanted his testimony. And then there's board precedent that says if you lie at court, but you recant timely, that it might not have as much weight against you. I don't know if his recantation is timely. It's several months later. Now there was heavy snowstorms in Kansas City. There was a court date that was canceled. So why it was two months later, who knows. But the point is the board never addressed it. We briefed the issue to the board. We said, your board, we think it was a timely recantation. And nowhere does the board talk about whether he timely recanted. If the court remands, we would ask the court to also remand on that question because the board really needs to address it in the first instance. Do you think that the immigration judge could determine this was material and not simply because he put a false name as the person who helped him, but that person actually was somebody who had been preparing false applications? I do think she was persuaded by the testimony of Officer Broadman, who came in and he testified by telephone, but he testified that this gentleman had, it was quite a ring of people that he had prepared false asylum applications for. The problem with Broadman's testimony was, Cobongo was under threat of prosecution, felony prosecution, which probably would have led to his deportation. And they just start showing him these files and saying, here, in exchange for not charging you, was this one fraudulent? Was this one fraudulent? So we have, I think there's a question of whether Cobongo's just saying all of this to get out of it. Either way, the judge was, I think, very persuaded by Broadman's testimony that because of who it was that prepared the application, it must be fraudulent. The problem with that is- But the district, the IJ gave your client several months to go out and find Cobongo and try to get another affidavit explaining it. You don't need to explain why, but he or she, whoever it was, did give you time. I'll say he lives in Democratic Republic of Congo. I have since gotten an affidavit from him. We've filed a motion to reopen at the board. His new affidavit, and the court can't consider it because it's outside the record, but his new affidavit confirms that Mr. Limbea's claim was his own. But aside from that, the government has the burden to present a witness that can be cross-examined. It's not Mr. Limbea's burden to go find the witness they want to use to ask him cross-examination questions. The government opted not to bring Cobongo to trial, not to bring, but they offered his affidavit, which we can't contest because we can't put him on the stand. If you'll look in the trial transcript, we actually asked, Your Honor, could we go to pose him somewhere, but none of us could find him. And so it's our request that the court remand this for a finding on whether the application is frivolous, finding that the signature on the application was not material, that it didn't have any weight on whether the application would have been granted. And because he was seeking adjustment of status, it wasn't even an application that was rebuttal. Thank you. Okay. Thank you. Nieman-Kelting? Nieman-Kelting? I apologize. Good morning. Good morning. May it please the court. Melissa Nieman-Kelting for the Attorney General. And I think other than saying credibility is always material, I'd like to just start by addressing some of the points that the panel has already raised with opposing counsel. I would note that there was definitely a void in the record as to what happened between the end of the hearing in September 2010, where Mr. Lembe was steadfastly claiming that Eric Mufudi was in fact an individual with whom he had met in Kansas City in the Wichita State Computer Lab, concocting an entire elaborate framework for the circumstances under which he and Mufudi prepared this asylum application. Let me just ask this. What is your understanding of the materiality ruling? You know, I've read it and it's, to me anyway, it's still kind of vague. The, is it something more than, are they, the BIA and the IJ saying that the prepared, the false preparer's name and address in and of itself is material and that is all we need to show? Or are they saying because we can't believe that, we know that's false, we can't believe anything else and that makes it material? What, what, what do you understand the materiality finding was? I understand your honor's concerns. Here, both the IJ and the board indicated that it was undisputed that he fabricated deliberately the name of the preparer. And the reason that that was material, whether or not that in of itself, they didn't explicitly say, and I think you could make an argument in this circumstance, that it was based on a case-by-case analysis. This isn't a case where he fabricated the name of a friend because the friend didn't want to come to the attention of the immigration authorities. But that was just a lie he told to protect his friend. Here he told a lie to distance himself from the actual preparer of the application who was involved with a fairly significant fraud ring. But here the agency, to get back to your honor's question, here the agency said it's material because you lied about that asylum preparer. And then in, in admitting your lie, you never affirmatively owned the contents of your asylum application. What about the words of the affidavit counsel? Yes, your honor. How do you do, how do you interpret paragraph four? And by the way, who, suppose we think it's about 50-50. Who should we interpret paragraph four in favor of and against? Those are two questions. I will answer them both. I think you should interpret it in favor of the government if you think it is 50-50 because of both of the burdens. We have two separate burdens of proof here, correct? Before the agency, counsel is correct. A hundred percent. It was the government's burden to establish by preponderance of the evidence, preponderance of the evidence that the application was frivolous. Here, it's not just this affidavit, which I will discuss. There was also the fraud memo that was prepared in the course of the fraud investigation that explicitly identified Mr. Lambea as application as having been fraudulently prepared. There was the record of sworn statement executed by Mr. Coco Chanel Cabongo that he had an opportunity to review and sign that indicated that he did help Mr. Lambea prepare this application that was identified as fraudulent. And we had the testimony of special agent agent Broadman, who had over 11 years of experience in investigating fraudulent asylum claims and who was personally involved in this investigation, very well aware of the MO of Mr. Coco Chanel Cabongo. And in his opinion, the method through which Lambea and Coco Chanel Cabongo worked in this case tracked with the preparation of other fraudulent asylum claims. Here, I would agree that this is ambiguous, that this does not cut strongly in favor one way or the other. And to the extent that it was a litigation strategy to just put a very limited affidavit on the record after his very extensive testimony on the witness stand under oath in immigration court, that this individual named Eric Mufudi assisted him with his claim to the extent that they waited after trying to subpoena, or rather to try to get Mr. Coco Chanel Cabongo to come, asked for continuance to get more time, got more time, then there's no explanation in the record of what happened to then change the tact to, well now here we're going to submit an affidavit admitting that you lied under oath and purporting to tell what happened. To the extent that that was a litigation strategy to not go that one step further when obviously the veracity of your entire claim was now under question when you are admitting that the person who actually prepared your asylum application was an individual who's been convicted for mail fraud in light of his fraudulent asylum ring. To just say that, as I believe Judge Kelly pointed out, that it really just says I related to him my testimony of the events accounted in Congo and asked him to translate it into English for me, I think maybe Judge Benton, excuse me. And then to the extent that Petitioner's Counsel relies back on Mr. Coco Chanel Cabongo's affidavit, it says he narrated his asylum story to me while I typed it on my computer. So we have evidence that doesn't really cut one way or the other and in this circumstance I think both the board and this court have said that the IJ is not required to accept a petitioner's explanations when there's persuasive evidence in the record to suggest that the contrary is true. And here we had a preponderance of the evidence standard before the immigration court or rather that the immigration court that the government had to prove and it wasn't just this affidavit, it was all of the evidence together. Again, I think you have to step back. This isn't just an immaterial, I lied because my friend didn't want me to put his real name on the application, but everything else is true. Whether something is material is relevant in regard to the entire claim. Yeah, I understand all the, you know, all that's the evidence of trying to prove, but what, what is, what's the materiality? What is it, is it the fact that the IJ could not believe anything else in his application on the I-589 or? Well, the IJ certainly said that with respect to the adverse credibility finding and I would note that Mr. Lumbea doesn't really challenge that, that it's in the rubric of the Real ID Act, under the Real ID Act where any inconsistency or fabrication is relevant and can support an adverse credibility finding. And here when the IJ was talking about adverse credibility, which he talked to, excuse me, she, which she talked about first, she said, I can't give your testimony any weight because you've lied to me. You've sat on my the remainder of your testimony about your asylum claim any weight because you have, have sat before this court and lied. I guess the question though is, does that in and of itself make it material? The fact that, I think the fact that it was, that he lied. Yeah, an adverse credibility. I can't trust anything you will say. I mean, how does, it seems like the credibility determination and the frivolous determination sort of bleed together at that point. They can, but I think the agency in its published decisions and after Congress amended the act in 1996 to provide this provision for fraudulent asylum claims, the concern was safeguards for the applicant and it's well established, I believe, among the circuits that an adverse credibility finding alone is not enough to trigger a frivolous asylum finding. If that were the case, every time a court upheld an adverse credibility, that that individual would be permanently barred forever from any immigration benefit. Here, and the board has required and courts have given deference to this, that the agency must do a separate frivolous analysis. They must discuss, the agency must discuss whether the misrepresentation was deliberate and they must discuss whether it was material. So to the extent that the IJ initially was saying, I can't give your claim any weight, um, that she was discussing first the, the adverse credibility finding. Then she went on to discuss the materiality and the way the agency has phrased it, framed it up in this case is it was material because you, you lied about who prepared your asylum application. When in point of fact, who prepared your application was a known fraudster and you came back and said the contents of this claim are my own. What if, what if, if the, if the, um, IJ had determined, all right, you're telling me that the substance of your petition is accurate. That the only thing, what if you interpret it that way? The only thing that's inaccurate is who signed it, who helped prepare it. Do we come to the same result? Does the, does the immigration judge come to the same result in your mind? Okay. You're affirming it, but I still think that this one false aspect of it taints the whole thing. It's material and frivolous. I think in this case, your honor, in the facts of this case, yes. Would that always be the case? Not necessarily, but in this case, yes, it has to be because credibility is always material. And here he lied about who prepared his asylum application to, to distance himself from this So I think it would be reasonable for an immigration judge and the board to say, in this case, the fact that you lied about who prepared your asylum application, that's enough because it called, we, we can't believe you, you, you came before us. And I would like to point out something that isn't necessarily, um, explicitly noted in his affidavit. He argues that his reason for lying was that he was surprised, confused, and scared because this was new information to him that Mr. Coco Chanel Cabongo was involved in this fraud ring because they had, you know, they had just known each other back in, in the Congo, the Democratic Republic of Congo, who was a friend of his uncle's. But if you look at page 184 of the record, that is where Mr. Lembeya is on cross-examination before the introduction of any of this rebuttal evidence that is going to put him on notice that there's a DHS attorney asks him, who prepared your asylum application? This name, Eric Mufudi, is that who prepared your asylum application? Yes. Did you meet him? Yes. So his explanations for why he lied and concocting out of whole cloth a circumstance under which he met a man who then he later conceded didn't exist, who would come to the Wichita area to visit family and meet in the doesn't explain why he lied before the introduction of the rebuttal evidence. Why did he need to conceal the fact if he really didn't know that Mr. Cabongo was involved in some nefarious dealings? Why would it have been a problem to say, well, Eric was the name that was on the application, but Mr. Cabongo is the one to whom I related my claim and told the facts as they occurred to me in the Congo when I got the affidavit. So it's just curious that he didn't just come forward with that right away. So his explanations don't really cover why he lied before he was on notice with all of the rebuttal evidence that this was a problem. My problem with the IJ is that a lot of what he says is conclusory and vague. And let me just ask you about one of them. It says at the bottom, page 14 of his opinion, says, in addition, I found the respondent's testimony before the court to contain falsehoods and therefore such testimony cannot meet the burden of proof for either application for relief. Yes, Your Honor. What did, what, what testimony is he talking about that contains falsehoods? Is it just the name and address? I would take that there to mean, yeah, the testimony about who prepared his asylum application, because this, we have to go back now. We've switched back. We're in the framework of withholding and convention against torture protection. And there, an adverse credibility finding is enough to be fatal. But that's not what he said. He could easily have said, I, you know, I find that your, your I. I-589, the asylum. Whatever is false. But he says, I found the respondent's testimony before the court to contain falsehoods and therefore such testimony cannot meet the burden of proof for either application for relief. What, what is she referring to? My understanding as I read it, Your Honor, and the way the board took that section to me, because I believe petitioner challenged that in his appeal to the board saying, you can't use the frivolous finding to not reach my withholding and cap claims. And here, it seems that that is what the IJ starts to do. And then she says, I'm not reaching your claims because I find them frivolous. And then she says, in addition, I find the testimony before the court to contain falsehoods and therefore such testimony cannot meet the burden of proof for either application for relief. So because I took that to mean that also his adverse credibility finding, separate and apart from the fact that it rose to the level of frivolous. The adverse credibility finding was also fatal to his claims. Well, I'm, I'm, I think, I think there's a lot of vague things I think are in there, but one of them is what part of the testimony is she saying is? I would argue that here she's talking about the lying, the blatant lies about Eric Mufudi and creating him out of whole cloth because that was the basis for her adverse credibility finding. She said, I cannot give your testimony any weight. You sat in my courtroom and you lied to me. You lied to me about who prepared your asylum application. She's not talking about his story. No, your honor. I don't think, and I believe we said this in our brief. I don't believe, and I'm going to run out of time if I may finish. Thank you. The agency did not make an explicit finding that the nature of his claim regarding what happened to him in the Democratic Republic of Congo was true or false. Here it was predicated on the fact that he made a material misrepresentation about who prepared the application. And in light of all of the evidence that that individual was connected with a fraud ring and that that individual specifically identified Mr. Limbeya's application as being one that was fraudulently prepared, the DHS had met its burden by preponderance of the evidence to show that this application was fraudulent. So here, the falsehoods that your honor is concerned about here that she's referring to have to mean the falsehoods about the lie about Eric Mufudi and his coming and Mr. Limbeya meeting with him personally in order to prepare his asylum claim. If I may ask the court to indulge us to add one more point in response to something the petitioner's counsel said. We have a short morning. I greatly appreciate it. I know I'm out of time. I would I just want to point out he makes much in his brief and again here today that he doesn't even want asylum. He just wants adjustment. And I understand that you have to get rid of the frivolous finding to get back to get to adjustment. But he's trying to argue that that affects materiality and it can't. It can't eviscerate the materiality aspect because then that would render the board's decision in matter of XMC to be superfluous because they're the board specifically found that an agency doesn't have to read if reach a final adjudication on the merits of an asylum claim in order for it to make a frivolous finding. Otherwise, anyone could come into court, render a frivolous asylum claim, get a better offer because they're married. They never mind. I don't I don't want you to reach the merits of my asylum claim. That's not material anymore because I don't need asylum relief. I just want to adjust. So I just point that out that that that should not be given much credence in the materiality argument here. It's material that he lied under oath to separate himself from a fraudulent asylum ring. And that's why the agency's frivolous findings should be upheld in this case. And I would like to talk to closing counsel afterward about the motion to reopen that he has informed us now that he's filed because that must be very recent. I was not aware of that, but that certainly may or may not affect the court's jurisdiction if the board were to reopen prior to the court rendering an opinion in this case. So perhaps he and I can talk about that afterward. Thank you so much for your time, Your Honor. Thank you. When did you file the motion to reopen? In the last day or two. It was sent yesterday or the day before. I understand. I want to start with one of the final questions Judge Riley asked. It was about whether the falsehoods were fatal to his claim. The judge is finding that there were falsehoods, and that just sort of wipes away the whole claim. This court has held that people who lie can still get asylum. The best case is Hassan versus Gonzalez, where a Somali female had lied about what clan she belonged to. She lied about a number of things, what happened to her in Somalia. But the court said, you're a woman. You're from Somalia. That's enough to get asylum. And so immigration judges, when they shut down the inquiry, they say, you lied, and so we're just not going to talk about anything else. They're not following this court's precedence. Hassan versus Gonzalez is still good law. It should guide the immigration judges in Kansas City. It should guide the board. And so just a finding that this person told a lie, I'm not asking for, I think it's awful that he told a lie in court. But I don't think he should be banished for life from the United States for it. And I don't think this court's cases say that. There are two places in the record where it's pretty clear Mr. Lambea and Mr. Page 301 of the record of that affidavit, paragraph four. He says, I related to him my testimony of the events I accounted in Congo. Cobongo's affidavit says, the applicant called me on the telephone and narrated his asylum story to me while I typed it on my computer. The judge in her decision at page 84 says, the respondent did not indicate the words on the application were his own. And in the sentence before, she says, she's relying on the fact that he testified that the words came from Eric Mafuidi. These two spots in the record, 301 and 343, pretty clearly show that he did account for his testimony. And at least, whether we get into preponderance of the evidence, whether the judge had enough before her to make this finding. She says he said nothing about these words being mine, and that's just clearly erroneous fact finding. His affidavit does say the words are mine. Even if it's a coin flip, even if it's 50-50, she can't say he said nothing. She could say I don't believe him, but that's not what she said in her decision. Finally, I want to talk about the XMC decision. If the court goes and reads matter of XMC, it looks like it's on point, but it's not. Because the board never talked about materiality. The question before the board in XMC was whether when an applicant withdraws his application, the board can even reach for frivolousness. We're not making that argument. We're saying the court had a right to reach frivolousness, but the question of materiality, and that was not before the board in XMC. The Third Circuit's decision in Luciana, which is still good law, and I would ask the court to follow it, is the case we would cite the court to, where in that case, the person wasn't even eligible for asylum. And so the court said, if the judge has no way to reach the merits, he's not even eligible for asylum, it's not material. Thank you very much. Okay, thank you. Well, thank you for your arguments, both in the briefs and the oral arguments. And we will take it under advisement and be back due course. Mr. Dino, is that the, include the docket this morning? Okay, thank you both. We will be in recess. It was here somewhere.